Charles ROGERS,

v.

## COLUMBIA/HCA OF CENTRAL LOUISIANA, INC., et al.

### Civil Action No. 96–2839.

United States District Court,
W.D. Louisiana,
Alexandria Division.

June 9, 1997.

A. Sale Smith, David A. Johnson, Smith Farrar & Johnson, Ball, LA, for Charles Rogers MD, M.D.

Scott Holland Crawford, Crawford & Lewis, Baton Rouge, LA, Mary G. Erlingson, Matchett Verbois Futrell & Henchy, Baton Rouge, LA, for Columbia/HCA of Central Louisiana, Inc., Philip Lindsay, M.D., George Hovantanian, M.D., J. Michael Conerly, M.D., David Rayburn, M.D., John McCabe, M.D., Rapides Foundation.

Scott Holland Crawford, Crawford & Lewis, Baton Rouge, LA, for Central Louisiana Healthcare System Ltd. Partnership.

## RULING

LITTLE, Chief Judge.

As the stay of this matter is lifted, we consider again the defendants' motion for summary judgment. This case requires the court to apply a maxim stated by the English philosopher John Donne: "I observe the physician with the same diligence as he the disease."[1] We apply the federal Health Care Quality Improvement Act of 1986 (the "HCQIA"), 42 U.S.C. § 11101, et seq., which establishes immunity for physician peer review committee actions in qualifying circumstances.[2] This suit is precisely the type that the HCQIA is intended to prevent. For the reasons that follow, the motion is GRANTED and the suit DISMISSED.

### I. Factual and Procedural Background

Plaintiff Charles Rogers ("Rogers"), a licensed physician specializing in the sub-specialty of bariatric surgery, seeks relief under seven counts arising from the one-year revocation of his bariatric surgery privileges at Rapides Regional Medical Center ("Rapides Regional"), a medical facility operated by defendants Columbia/HCA of Central Louisiana, Inc. and Central LA Healthcare Systems Limited Partnership (together "RRMC") in Alexandria, Louisiana. Named as defendants are RRMC and physicians Philip Lindsay, George Hovnatanian, J. Michael Conerly, David Rayburn, and John McCabe (collectively the "Doctor Defendants"). Each Doctor Defendant is a surgeon on the "Active Medical Staff" at Rapides Regional. The Doctor Defendants comprised a professional peer review committee that evaluated Rogers and recommended the revocation of his bariatric surgery privileges for one year. The Medical Executive Committee adopted the peer committee's recommendation.

The facts of this case, including the administrative remedies available to Rogers, were ably reported in our first consideration of the defendants' alternative motion to dismiss or for summary judgment. *Rogers v. Columbia/HCA of Central Louisiana, Inc.*, 961 F.Supp. 960 (W.D.La.1997). We incorporate our prior ruling and repeat selected discussions solely for the ease of the reader.

In sum, Rogers asserts multiple antitrust violations of the Sherman Act (Counts One, Two, and Three), that La.Rev.Stat. Ann. § 13:3715.3 is unconstitutional (Count Four), violation of 42 U.S.C. § 1983 (Count Five), violation of the HCQIA, § 11111 (Count Six), and defamation (Count Seven). Rogers seeks injunctive, declaratory, and compensatory relief.

On 27 December 1996 we denied Rogers' request for a temporary restraining order or preliminary injunction. Defendants moved alternatively to dismiss or for summary judgment. On 19 February 1997 we ordered the action stayed pending Rogers' completion of

---

**1.** J. Donne, *Devotions Upon Emergent Occasions,* No. 6.

**2.** All statutory references will be to Title 42 of the United States Code, except as otherwise noted.

available administrative remedies. The basis for our ruling was the doctrine of primary jurisdiction.

Pursuant to the administrative remedies available to Rogers under the Rapides Regional Medical Staff Bylaws (the "Bylaws"), an administrative hearing concerning the revocation of Rogers' bariatric surgery privileges was held on 5–6 February 1997. The "Fair Hearing Panel" (the "Panel") consisted of physicians Vanda Davidson, Gary Manuel, Robert Moore, Lance Templeton, and Renick Webb. The Panel, in a recommendation issued 21 February 1997, found that the actions by the Medical Executive Committee did have a basis in fact and the conclusions drawn were not capricious or arbitrary. Specifically, the Panel found that "[c]omplication rates were above acceptable rates for the community," and that Rogers "was naive in his assessment of patients for surgery and the clinical capabilities of the hospital's surgery and support facilities." The Panel also found that the recommendation of the Medical Executive Committee was arbitrary as to the length of time set for Rogers' suspension. The Panel recommended that Rogers' bariatric surgery privileges instead should be suspended until he completed at least four weeks of additional training in bariatric surgery. The Panel further recommended that reinstatement of Rogers' bariatric surgery privileges should be subject to: (1) establishment of patient selection criteria by a consulting bariatric specialist; (2) preoperative consultation by telephone with the consulting specialist until the Medical Executive Committee is confident of Rogers' skills and judgment: (3) critical clinical review of all bariatric surgeries; and (4) secession of reoperative elective surgery procedures until Rogers has established an acceptable complication rate in primary procedures.

The Medical Executive Committee on 6 March 1997 unanimously accepted the recommendations of the Panel. On 4 April 1997 Rogers voluntarily changed his status at Rapides Regional to "courtesy" status, as he had been elevated to the full medical staff at another hospital.

On 8 April 1997 we lifted the stay of this action. We now complete our consideration of defendants' motion. Defendants seek judgment in their favor and an award of attorneys' fees and costs pursuant to the HCQIA, § 11113.

## II. *Summary Judgment Standard*

We treat the defendants' alternative motion as one for summary judgment because matters outside the pleadings were presented to and not excluded by the court. Fed. R.Civ.P. 12(b); *Washington v. Allstate Ins. Co.* 901 F.2d 1281, 1284 (5th Cir.1990). Rogers' request for a continuance pursuant to Rule 56(f) of the federal Rules of Civil Procedure is denied because Rogers did not submit an affidavit in support of his request. Fed.R.Civ.P. 56(f). A further delay, moreover, is not justified.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. at 2510. In making its determination, the court must draw all justifiable inferences in favor of the nonmoving party. *Id.* at 255, 106 S.Ct. at 2513–14. Once the moving party's has initially shown "that there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the non-movant must come forward, after adequate time for discovery, with "specific facts" showing a genuine factual issue for trial. Fed. R.Civ.P. 56(e); *Matsushita Elec. Ind. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "Conclusionary denials, improbable inferences, and legalistic argumentation" are not an adequate substitute for specific facts showing that there is a genuine issue for trial. *S.E.C. v. Recile,* 10 F.3d 1093, 1097 (5th Cir.1993).

■ HCQIA immunity is a question of law that the district court may determine on summary judgment. *Bryan v. James E. Holmes Regional Medical Center*, 33 F.3d 1318, 1332–33 (11th Cir.1994); *Monroe v. AMI Hospitals of Texas, Inc.*, 877 F.Supp. 1022 (S.D.Tex.1994).

## III. *Immunity Under the HCQIA*

The HCQIA provides immunity for qualifying peer review actions. The principal issue in this case is whether the defendants are shielded because they complied with the dictates of the HCQIA.

If a "professional review action," as defined by § 11151(9), of a "professional review body" meets all the standards specified in § 11112(a), then the professional review body, any person acting as a member or staff to the body, any person under a contract or other formal agreement with the body, and any person who participates with or assists the body with respect to the action, "shall not be liable in damages under any law of the United States or of any State ... with respect to the action." § 11111(a)(1).

Defendants contend that Counts One, Two, Three (antitrust), and Seven (defamation) should be dismissed because their peer review actions are immunized by the HCQIA. Careful statutory analysis is required to determine if immunity applies.

### A. *HCQIA Shields All Defendants*

■ As an initial matter, we find that all defendants fall within the scope of HCQIA immunity pursuant to § 11111(a)(1)(A-D) because each is defined in the statute under the term "professional review body." The term "professional review body" means "a health care entity and the governing body or any committee of a health care entity which conducts professional review activity, and includes any committee of the medical staff of such an entity when assisting the governing body in a professional review activity." § 11151(11).

There is no dispute that RRMC is a health care entity and that the Doctor Defendants were assisting RRMC in a professional re-view activity. Accordingly, if HCQIA immunity applies, it applies to all defendants.

### B. *Professional Review Action*

■ We also find that defendants' actions at issue qualify as a "professional review action" within the statutory definition. "Professional review action" is defined in § 11151(9):

The term ... means an action or recommendation of a professional review body which is taken or made in the conduct of professional review activity, which is based on the competence or professional conduct of an individual physician (which conduct affects or could affect adversely the health or welfare of a patient or patients), and which affects (or may affect) adversely the clinical privileges, or membership in a professional society, of the physician. Such term includes a formal decision of a professional review body not to take an action or make a recommendation described in the previous sentence and also includes professional review activities relating to a professional review action. In this title, an action is not considered to be based on the competence or professional conduct of a physician if the action is primarily based on—

(A) the physician's association, or lack of association, with a professional society or association,

(B) the physician's fees or the physician's advertising or engaging in other competitive acts intended to solicit or retain business,

(C) the physician's participation in prepaid group health plans, salaried employment, or any other manner of delivering health services whether on a fee-for-service or other basis,

(D) a physician's association with, supervision of, delegation of authority to, support for, training of, or participation in a private group practice with, a member or members of a particular class of health care practitioner or professional, or

(E) any other matter that does not relate to the competence or professional conduct of a physician.

Rogers contends that the defendants' actions do not qualify as a "professional review action" because: (1) the peer committee did not consult with a bariatric surgeon in making its determinations; (2) the peer committee members were in direct economic competition with him; and (3) they were motivated by a desire to keep Rogers from competing for weight reduction patients. Rogers asserts that the medical reasons given for his suspension were a facade hiding a true anticompetitive motivation.

We do not interpret § 11151(9) to require that a "professional review action" necessarily involve consultation with a sub-specialist in the same field as the physician being reviewed. There is no dispute in this case as to the professional competence of the peer committee. We find that a peer committee of surgeons was qualified to make a peer review of Rogers' surgical judgment and complication rates. Specialized training is not required to judge whether performing elective surgery in the face of active infection and performing weight reduction surgery in a 73–year–old man with a hiatal hernia is competent and professional conduct.

We also are not dissuaded by the fact that the peer committee members may have been competitors with Rogers. Some degree of competition is inherent in professional peer review. Congress decided that peer review was preferable to litigation, so secured immunity to peer committee members. Courts interpreting adverse review actions necessarily must be wary of vigilante capitalism disguised as peer review. As medical care becomes more centralized under monolithic managed care, the chance of abuse against individual doctors may increase. Perhaps identifying this problem, Congress in § 11151(9)(A–E) identified improper motivations for peer review.

Having carefully reviewed the record in this case, we do not find that the peer review action taken against Rogers was pretextual. To the contrary, we find that the primary reason for the action against Rogers was his professional incompetence.

## C. Standards for Professional Review Actions

Having determined that the defendants' actions qualify as a "professional review action," we must decide if the actions satisfy the standards of § 11112.

█ In order to trigger immunity under § 11111, a professional review action must be taken:

(1) in the reasonable belief that the action was in the furtherance of quality health care,

(2) after a reasonable effort to obtain the facts of the matter,

(3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and

(4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).

§ 11112(a). The statute creates an "unusual" summary judgment standard. *Bryan,* 33 F.3d at 1333. There is a rebuttable presumption that a peer review action satisfies the standards of § 11112(a). § 11112(a)(4): *Monroe,* 877 F.Supp. at 1027. Rogers thus bears the burden of proving by a preponderance of the evidence that the peer review process did not satisfy the standards of § 11112(a). *Bryan,* 33 F.3d at 1333; *Monroe,* 877 F.Supp. at 1027.

### 1. Reasonable Belief

A review of the record demonstrates that the decision to revoke Rogers' bariatric surgery privileges at Rapides Regional was taken "in the reasonable belief that the action was in the furtherance of quality health care." § 11112(a)(1). This prong of the immunity test is satisfied if "the reviewers, with the information available to them at the time of the professional review action, would reasonably have concluded that their action would restrict incompetent behavior or would protect patients." *Bryan,* 33 F.3d at 1335 (quoting H.R.Rep. No. 903, at 10, reprinted in 1986 U.S.C.C.A.N. at 6393).

Here, the actions were taken against Rogers in the reasonable belief that doing so would promote quality health care. The peer committee was concerned by a pattern of errors in professional judgment that resulted in an inordinately high complication rate. The belief was reasonable.

### 2. *Reasonable Effort to Obtain Facts*

We find that the committee's actions also were taken "after a reasonable effort to obtain the facts." § 11112(a)(2). In response to concerns raised about Rogers' complication rate, the peer review committee was formed in December 1995. At that time Rogers was informed that he was on probation and that his cases were being monitored. From that time until the revocation of his privileges in October 1996, Rogers received frequent evaluations and recommendations from the medical staff and peer committee at Rapides Regional. In July 1996 the committee met and reviewed twenty cases performed by Rogers. Of those twenty patients, seven suffered from wound closure complications. The committee met again on 1 October 1996 to evaluate Rogers. The committee found that Rogers demonstrated particularly poor medical judgment in performing two bariatric surgeries.

The decision to revoke Rogers' privileges was made after substantial review. The committee evaluated Rogers over a ten-month period. Rogers had knowledge of this scrutiny. If anything, the period of review was excessive. Numerous patients suffered complications while the committee collected data on Rogers.

### 3. *Adequate Notice and Hearing*

Rogers' privileges were revoked "after such other [notice and hearing] procedures as [were] fair to the physician under the circumstances." § 11112(a)(3). Section 11112(b) sets forth "safe harbor" conditions that a health care entity may fulfill to satisfy adequate notice and hearing:

A health care entity is deemed to have met the adequate notice and hearing requirement of subsection (a)(3) of this section with respect to a physician if the

following conditions are met (or are waived voluntarily by the physician):

(1) Notice of proposed action

The physician has been given notice stating—

(A)(i) that a professional review action has been proposed to be taken against the physician,

(ii) reasons for the proposed action,

(B)(i) that the physician has the right to request a hearing on the proposed action,

(ii) any time limit (of not less than 30 days) within which to request such a hearing, and

(C) a summary of the rights in the hearing under paragraph (3).

(2) Notice of hearing.

If a hearing is requested on a timely basis under paragraph (1)(B), the physician involved must be given notice stating—

(A) the place, time, and date, of the hearing, which date shall not be less than 30 days after the date of the notice, and

(B) a list of the witnesses (if any) expected to testify at the hearing on behalf of the professional review body.

(3) Conduct of hearing and notice.

If a hearing is requested on a timely basis under paragraph (1)(B)—

(A) subject to subparagraph (B), the hearing shall be held (as determined by the health care entity)—

(i) before an arbitrator mutually acceptable to the physician and the health care entity,

(ii) before a hearing officer who is appointed by the entity and who is not in direct economic competition with the physician involved, or

(iii) before a panel of individuals who are appointed by the entity and are not in direct competition with the physician involved;

(B) the right to the hearing may be forfeited if the physician fails, without good cause, to appear;

(C) in the hearing the physician has the right—

 (i) to representation by an attorney or other person of the physician's choice,

 (ii) to have a record made of the proceedings, copies of which may be obtained by the physician upon payment of any reasonable charges associated with the preparation thereof

 (iii) to call, examine, and cross-examine witnesses,

 (iv) to preset evidence determined to be relevant by the hearing officer, regardless of its admissibility in a court of law, and

 (v) to submit a written statement at the close of the hearing; and

(D) upon completion of the hearing, the physician involved has the right—

 (i) to receive the written recommendation of the arbitrator, officer, or panel, including a statement of the basis for the recommendation, and

 (ii) to receive a written decision of the health care entity, including a statement of the basis for the decision.

*A professional review body's failure to meet the conditions described in this subsection shall not, in itself, constitute failure to meet the standards of subsection (a)(3).*

§ 11112(b) (emphasis added). The final, emphasized, sentence of that section relates to the second alternative part of the notice and hearing requirement set forth in § 11112(a)(3): "after such other procedures as are fair to the physician under the circumstances." In other words, as long as there is adequate notice and a hearing, procedure that is fair to the physician under the circum-

stances, the precise language of § 11112(b) need not be followed.

Rogers strenuously contends that "adequate notice and hearing" were not afforded him because his privileges were revoked *prior* to a hearing.[3] The question is whether a pre-deprivation hearing is required for immunity to attach under the HCQIA. This is a close question. We agree that the first part of § 11112(a)(3), and § 11112(b), ignoring the very last sentence, contemplate a hearing before an adverse professional review action. This is true because § 11112(c) provides two exceptions to a pre-deprivation hearing: (1) "where the failure to take such an action may result in the imminent danger to the health of any individual," § 11112(c)(2); and (2) where the action is a suspension of less than 14 days. § 11112(c)(1)(B).[4] Our first instinct is to agree that a pre-deprivation hearing is required.

But Congress, weighing the necessity of a pre-deprivation hearing to a physician against the public health ramifications of allowing incompetent physicians to practice while the slow wheels of justice grind, determined that notice and hearing "procedures as are fair to the physician under the circumstances" also suffice to trigger immunity.[5] § 11112(a)(3). The plain language of the statute makes clear that assessing the "circumstances" requires a fact-driven analysis.

■ In the particular circumstances of this case, we find that the notice and hearing procedures provided Rogers were fair, even though Rogers did not receive a pre-deprivation hearing. Rogers was temporarily suspended in December 1995, placed on probation, and notified that a peer review

---

3. Rogers does not object to the procedures of the RRMC administrative process, other than the timing of the imposed sanction. Rogers accordingly has voluntarily waived objection to any errors in the administrative peer review process, except as to the right to a pre-deprivation hearing. § 11112(b). We need not address Rogers' administrative rights to counsel, to cross-examination, and to receive a written recommendation, for example.

4. The defendants do not suggest that Rogers' privileges were revoked because of an "imminent

danger to the health of any individual," although that argument conceivably could be made. We do not address this exception to notice because we find that adequate notice was provided by Rogers' probation.

5. We note that this clause was heavily criticized by some opponents of the bill as an egregious abuse of due process. *See* Robert S. Adler, *Stalking the Rogue Physician: An Analysis of the Health Care Quality Improvement Act*, 28 Am. Bus. L.J. 683, 724–27 n. 200 (1991).

committee would be evaluating his progress. For ten months he was monitored and corrected. Rogers knew what was at stake, but his conduct did not improve. We hold that this ten-month probationary period was sufficient under the circumstances to constitute "fair process."

### 4. *Reasonable Belief After Reasonable Effort*

The fourth prong of the § 11112(a) test essentially combines the first three elements. The role of the court is not "to substitute our judgment for that of the hospital's governing board or to reweigh the evidence regarding the renewal or termination of medical staff privileges." *Shahawy v. Harrison,* 875 F.2d 1529, 1533 (11th Cir.1989). As fully set forth above, we find that the Medical Executive Committee terminated Rogers "in the reasonable belief" that the action was warranted by the facts known." § 11112(a)(4).

### D. *Conclusion: HCQIA Immunity Applies*

■ We find that the defendants' professional peer review actions in this case satisfy the standards of § 11112(a). The defendants' peer review actions accordingly are afforded immunity pursuant to the HCQIA.[6] In that Counts One, Two, Three (antitrust), and Seven (defamation) of Rogers' suit arise from those actions, they are dismissed.

### IV. *No Private Right of Action Under the HCQIA*

Rogers separately alleges in Count Six that defendants are liable for violating provisions of the HCQIA. The question presented is whether the HCQIA provides a private cause of action. The statute does not explicitly provide a cause of action. We also find that the HCQIA does not imply a private right of action. On the issue of inferring a private right of action in the HCQIA, we adopt the keen analysis of the Tenth Circuit in *Hancock v. Blue Cross–Blue Shield of Kansas, Inc.,* 21 F.3d 373, 374 (10th Cir.

1994). After weighing the factors for finding implied causes of action outlined by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), that court held that there is no implied right of action in the HCQIA. *See also Schmidt v. Principal Health Care of Louisiana, Inc.,* 1996 WL 264990 (E.D.La.1996) (adopting reasoning of *Hancock*).

■ In enacting the HCQIA, Congress intended to secure effective professional peer review by providing immunity from suits to those professional peer review groups that comply with the HCQIA. *Hancock,* 21 F.3d at 374–75 (citations omitted). The statute was not enacted to protect physicians subject to peer review, such as Rogers.

Even if the defendants violated the HCQIA, which we conclude they did not, Rogers does not possess an implied right of action under the statute. Count Six of Rogers' complaint is without merit.

### V. *Defendant Physicians and Medical Entities are not State Actors*

HCQIA immunity does not shield the defendants from liability for violating the United States Constitution. § 11111(a)(1). In Count Five Rogers seeks damages pursuant to 42 U.S.C. § 1983 for alleged constitutional violations by the defendants; to wit, the taking of his property without due process in violation of the Fourteenth Amendment.

It is well established that private action is immune from the restrictions of the Fourteenth Amendment. *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 349, 95 S.Ct. 449, 452–53, 42 L.Ed.2d 477, 483 (1974). The inquiry "must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Id.* at 351, 95 S.Ct. at 453. Rogers asserts that defendants were state actors because the state "created" the peer review process, or at the least provided "extraordinarily significant

---

**6.** Section 11115(a) of the HCQIA permits states to provide greater protection for peer review actions. La.Rev.Stat. § 13:3715.3 complements the HCQIA. As defendants are immunized pursuant to the HCQIA to the charges in Counts One, Two, Three, and Seven, we need not address the state law issues.

encouragement" to the defendants by providing them immunity for their peer review actions.

 In *Jackson,* the Supreme Court soundly rejected the notion that a party is a state actor because the state "has specifically authorized and approved" its practices. *Id.* at 354, 95 S.Ct. at 455. In cases factually similar to this one, other courts have found no state action in physician peer review. *Pinhas v. Summit Health, Ltd.,* 894 F.2d 1024 (9th Cir.1989); *Sarin v. Samaritan Health Center,* 813 F.2d 755 (6th Cir.1987). If "significant encouragement" from the state constituted state action, there would be very few private individuals left in the nation. We find the link in this case between the state and the defendants to be tenuous. Count Five is thus without merit.

## VI. *Constitutional Attack of La.Rev.Stat. § 13:3715.3 is Moot*

Finally, Rogers in Count Four seeks a declaration that La.Rev.Stat. § 13:3715.3 is unconstitutional. That statute is the state equivalent to the federal HCQIA.

We will not assess the constitutionality of La.Rev.Stat. § 13:3715.3 because the issue is moot. Rogers presumably included his attack of the statute in his complaint because he expected to preempt an argument by the defendants. Instead, the defendants hinged their argument on the HCQIA. La.Rev.Stat. § 13:3715.3 was not at issue and a declaration that it is constitutionally infirm would not affect the outcome of this case.

 We will not engage in an abstract constitutional assault on state law where there is no concrete adverseness to sharpen the presentation of issues. *Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). This is particularly true, as here, where the state Supreme Court has recently upheld the law at issue. *See Smith v. Our Lady of the Lake Hosp., Inc.,* 639 So.2d 730 (La.1994).

## VII. *Attorneys' Fees*

 A defendant that satisfies the standards for professional review actions under the HCQIA, § 11112, and "substantially prevails" in a lawsuit, may be entitled to payment of reasonable attorneys' fees and costs if the claim, or the claimant's conduct during litigation, was "frivolous, unreasonable, without foundation, or in bad faith." § 11113. This is a discretionary matter for the district court to determine. *Addis v. Holy Cross Health System Corp.,* 88 F.3d 482, 486–87 (7th Cir.1996).

In this case, the defendants have satisfied § 11112 and substantially prevailed on summary judgment. We find, however, that Rogers' claim was not frivolous, unreasonable, without foundation, or in bad faith. The HCQIA is a relatively new law. In certain parts it is imprecisely drafted, meaning that reasonable minds may differ as to its interpretation. Although we have ruled against Rogers, that does not mean the suit was without foundation at the time of filing. *Muzquiz v. W.A. Foote Memorial Hosp., Inc.,* 70 F.3d 422, 432 (6th Cir.1995). As the defendants did not obviously satisfy the "safe harbor" provisions of § 11112, court interpretation was required.

We also have no reason to believe that Rogers' conduct during litigation was in any way unreasonable. To the contrary, both parties are lauded for completing the administrative process in a civil manner. The request for costs and fees is denied.

## VIII. *Conclusion*

For the reasons set forth above, the defendants' summary judgment motion is granted and the suit is dismissed. The defendants motion for costs and fees is denied.