**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 14, 2005**

**Charles R. Fulbruge III**
**Clerk**

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Summary Calendar
No. 04-41101
_____

JOAN CAROL ELLIS ROBERTS,

Plaintiff-Appellant,

versus

TITUS COUNTY MEMORIAL HOSPITAL;
GEORGE BURNS, Director of Radiology Titus County
Memorial Hospital; GENE LOTT, Director of
Human Resources Titus County Memorial Hospital,

Defendants-Appellees.

---

Appeal from the United States District Court
for the Eastern District of Texas,
Texarkana Division
No. 5:03-CV-00021-DF

---

Before JONES, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:[*]

Appellant Joan Roberts ("Roberts") appeals pro se the district court's award of summary judgment to Appellees Titus County Memorial Hospital ("Hospital") and employees of the Hospital, Director of Radiology George Burns, and Director of Human Resources Gene Lott. The district court wrote a thorough, carefully reasoned opinion and held, inter alia, that Roberts

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

failed to raise a material issue of triable fact on her claims of invasion of her First Amendment and Due Process rights, as well as Roberts's allegations of Title VII violations. We AFFIRM the district court in all respects.

## BACKGROUND

The Hospital employed Roberts as a CAT scan technologist in the radiology department from 1986 to 2002. Roberts routinely received high marks for her technological capabilities, but she had a mixed record for interpersonal relationships. Specifically, Roberts had a documented history of undermining doctors' orders and diagnoses of patients, as well as difficulty in arriving to work on time and in getting along with coworkers. In light of her interpersonal problems, and the qualifications of another technologist, when the Hospital opened a "lead tech" position, which required the same amount of work and paid the same salary, Roberts did not receive the position.

Roberts's First Amendment claim arises in part out of her disagreement with the Hospital's method for purchasing equipment, and her verbal complaints to two Hospital board members asserting the Hospital's violation of unspecified "competitive bidding" laws. Although the Hospital ultimately purchased the equipment favored by Roberts (who claims no entitlement to participate in this decision-making process), Roberts notified Hospital employees she intended to pursue a whistleblower action against the Hospital. After

2

filing suit, Roberts began soliciting Hospital employees for information concerning this action during working hours in violation of Hospital policy. Roberts received written warnings for soliciting during working hours and for improperly offering medical advice to patients. Failing to heed these warnings, Roberts was terminated.

Roberts pursued administrative action with the Equal Employment Opportunity Commission (EEOC) and ultimately filed the instant suit, claiming, inter alia, a violation of her First Amendment rights, her Due Process rights under the Fourteenth Amendment, as well as violations of Title VII.

## DISCUSSION

This court reviews the grant of summary judgment de novo, using the same standard as the district court. Urbano v. Continental Airlines, Inc., 138 F.3d 204, 205 (5th Cir. 1998).

A property right in maintaining employment may not be deprived without due process. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487, 1491 (1985). However, no process is due where no protected property interest exists. Bd. of Regents v. Roth, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705 (1976). As the constitution does not itself create property interests, a plaintiff claiming deprivation of a property right must clearly establish existence of such a right. Bishop v. Wood, 426 U.S. 341, 344-47, 96 S. Ct. 2074, 2076-79 (1972). In

ascertaining the existence of a property interest, we look to state law.  Id. at 344, 96 S. Ct. at 2077.

Texas courts strongly adhere to the employment at-will doctrine.  See, e.g., Sabine Pilot Serv. v. Hauck, 687 S.W.2d 733, 734 (Tex. 1985).  Texas law imposes a strong presumption in favor of at-will employment.  Zenor v. El Paso Healthcare Sys., Ltd., 176 F.3d 847, 862 (5th Cir. 1999); Montgomery County Hosp. Dist. v. Brown, 965 S.W.2d 501 (Tex. 1998).  Where a plaintiff relies on an employment policy, as opposed to an employment contract, to rebut the presumption of at-will employment, the proffered employment policy must contain explicit contractual terms altering the at-will relationship in a meaningful way (e.g., through an employment contract).  Id.  Texas courts are reluctant to imply deviation from at-will employment from ambiguous employment policies.  Id.

Based on Texas law and the employment policy at issue, the district court rejected Roberts's Due Process claims.  Roberts claims no employment contract.  Instead, Roberts cites the following provision from the Hospital's bylaws as evidence of a constitutional property interest in her continued employment:

> The Board of Managers shall appoint, under terms prescribed by the Board, a general manager to be known as the Administrator of the hospital district. . . .  He shall supervise the work of all employees . . . and also may dismiss any employee for good cause and shall thereafter make a report to the Board of the dismissal.

This provision, however, has nothing to do with Roberts's employment.  Instead, it discusses the responsibilities of an

4

entirely different employee at the Hospital, the Hospital Administrator. Roberts was not terminated by the Hospital Administrator, but instead by the Director of Human Resources. The district court correctly found that Roberts lacked a property interest in her continued employment because she failed to demonstrate that she was not an employee at-will, and therefore was not entitled to any process prior to her termination.

Roberts's First Amendment claims are similarly unavailing. She raises two specific claims in this vein: (1) that the Hospital's policy prohibiting her from acting as a "patient advocate"[1] was impermissibly vague and impeded her First Amendment rights; and (2) that the Hospital's anti-solicitation policy violated her First Amendment rights.

A statute, rule, or policy may be deemed impermissibly vague for either of two discrete reasons: It fails to provide people of ordinary intelligence a reasonable opportunity or fair notice to understand what conduct it prohibits; or, it authorizes or encourages arbitrary and discriminatory enforcement. See Chicago v. Morales, 527 U.S. 41, 56-57, 119 S. Ct. 1849, 1859 (1999).

Roberts contends that Hospital policy preventing her from interpreting x-rays or CAT scan results — i.e., diagnosing patients — constituted an impermissibly vague policy. As a matter of law,

---

[1] This title is an invention of Roberts. No term or condition of her employment vests her with such a title.

5

as the district court held, this claim is without merit. The Hospital's policy provides an individual of ordinary intelligence fair notice that diagnosing patients is the realm of physicians, and that staff are not to do so. Roberts, a non-physician, radiologic technologist, had sufficient notice to conform her conduct to clear Hospital policy.

Roberts's second First Amendment claim rests on an individual's ability to speak on matters of public concern. Speech addresses a matter of public concern when it is made primarily in the speaker's role as a citizen rather than as an employee addressing solely matters of personal interest. Connick v. Myers, 461 U.S. 138, 148, 103 S. Ct. 1684, 1690-91 (1983). This court has addressed First Amendment implications of policies similar to the instant policy. In Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana, we held that a state supreme court rule prohibiting non-lawyer students from representing certain solicited indigent parties did not prevent speech of any kind. 252 F.3d 781, 789-90 (5th Cir. 2001). If a court finds that the speech touches upon a matter of public concern, it must balance the plaintiff's interest in making those statements against "the interest of the State, as an employer, in promoting efficiency of public services it performs through its employees." Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S. Ct. 1731, 1734-35 (1968).

Roberts's practice of providing diagnoses to patients receiving x-rays and CAT scans, as well as giving unsolicited diagnoses to doctors, did not touch on a matter of public concern. The policy existed to protect patients from the unauthorized practice of medicine; to term this a free speech limitation would be a dangerous intrusion by the judiciary on the Hospital's prerogative to render medical services. See Connick, 461 U.S. at 146, 103 S. Ct. at 1690 ("[W]hen employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment."). Moreover, we agree with the district court that even if Roberts could demonstrate her speech touched on a matter of public concern, the Pickering balancing test requires ruling in the Hospital's favor. The Hospital was constitutionally justified in regulating the time, place, and manner of Roberts's speech where Roberts was in no way qualified to provide diagnoses.

As to Roberts's First Amendment claim concerning the Hospital's anti-solicitation policy, we agree with the district court that her speech in this area was arguably a matter of public concern. The goal of the Texas Whistleblower Act is to enhance openness and protect those informing officials of government wrongdoing. See TEX. GOV'T CODE ANN. § 554.002(a) (VERNON SUPP. 2004). Nevertheless, under the Pickering balancing test, Roberts cannot

7

prevail on these claims. Although Roberts had a right to make inquiries and statements about possible violations of state law and policy, the Hospital had a concomitant right to prevent such solicitations during working hours in the workplace. Roberts could have done her factfinding outside the Hospital on her own time; the anti-solicitation policy represents a valid time, place, and manner restriction. Cf. Connick, 461 U.S. at 148-53, 103 S. Ct. at 1691-93 (holding that termination of a public employee who distributed questionnaire did not violate the First Amendment, as most of the questions related to inter-office policies and the conduct threatened the agency's institutional efficiency). For these reasons, the district court properly awarded Appellees summary judgment on all of Roberts's First Amendment claims.

In considering a Title VII claim, unless direct evidence of discrimination exists, a court must utilize the three-step analysis first enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05, 93 S. Ct. 1817, 1824-25 (1973). Under this formula, a plaintiff must first establish a prima facie case of discrimination. If the plaintiff makes a prima facie case, the employer can rebut the claim by offering a legitimate, non-discriminatory reason for the employment decision. Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 957 (5th Cir. 1993). If the defendant succeeds, the court moves to the third step of the analysis, where the plaintiff bears the burden to prove that the reasons offered by the defendant are pretextual. Id.

Additionally, a plaintiff may establish a Title VII violation by demonstrating a hostile work environment. Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23, 114 S. Ct. 367, 371 (1993). A prima facie case of a hostile work environment is achieved by producing evidence that (1) she belongs to a protected group; (2) she experienced unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a "term, condition or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. See Shepherd v. Comptroller of Public Accounts for the State of Texas, 168 F.3d 871, 873 (5th Cir. 1999).

Because Title VII addresses only "ultimate employment decisions," Dollis v. Rubin, 77 F.3d 777, 781-82 (5th Cir. 1995), Roberts failed to state a prima facie case because the "lead tech" job did not constitute a new position — it required identical hours and received identical pay. Additionally, even assuming the "lead tech" job was considered a new position, the Hospital put forward valid, non-discriminatory reasons (namely, that Roberts was not suited for the job as she did not get along with others well, and that the person hired had superior credentials) that Roberts is unable to rebut with competent summary judgment evidence.

Similarly, Roberts failed to adduce any material issue of triable fact connecting her EEOC complaint with her valid termination, so her Title VII retaliation claim also fails under McDonnell-Douglas. Based on the numerous valid reasons for her

9

termination, and the dearth of evidence demonstrating any sort of pretext for that termination decision, Roberts fails on this claim as well.  Cf. Chancy v. New Orleans Public Facility Management, Inc., 179 F.3d 164, 168 (5th Cir. 1999) (discussing the very high standard a plaintiff must meet once an employer articulates a rational justification for the termination).

The judgment of the district court is **AFFIRMED.**